**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3410-18T3

IN THE MATTER OF THE
ESTATE OF PETER B.
PIETRANGELO, SR., DECEASED.

_____

Argued October 13, 2020 – Decided  October 22, 2020

Before Judges Fasciale and Mayer.

On appeal from the Superior Court, Chancery Division, Cape May County, Docket No. P-000037-17.

Glen H. Ridenour, II argued the cause for appellant Peter Pietrangelo, Jr. (Peter L. Klenk & Associates, attorneys; Glen H. Ridenour, II and Jill B. Fitzgerald, on the briefs).

Kevin J. Thornton argued the cause for respondent Michael Pietrangelo (Cooper Levenson, PA, attorneys; Kevin J. Thornton and Jennifer B. Bar, on the brief).

Robert S. Esposito, respondent, argued the cause pro se.

Respondent John Huffman has not filed a brief.

PER CURIAM

Two brothers—Peter Pietrangelo, Jr. (Peter) and Michael Pietrangelo (Michael)—contest whether their father, Peter B. Pietrangelo, Sr. (decedent), intended to gift his condominium (the property) to Michael.[1] Peter appeals from two orders: (1) a March 22, 2018 order denying his motion for summary judgment and granting summary judgment to Michael; and (2) a March 29, 2019 order denying Peter's reconsideration motion, and Peter's motions to disqualify Michael's trial counsel (different than his appellate counsel) and appoint an administrator ad litem. There are genuine issues of material fact as to whether the decedent intended to gift the property to Michael. We therefore reverse the order granting summary judgment to Michael, and remand for further proceedings.

On appeal, Peter raises the following arguments:

[POINT I]

The [judge] erred by not recognizing that [c]onfirmation of the decedent's reorganization [p]lan and discharge of his debts by the [b]ankruptcy [c]ourt vested ownership of the . . . property in the decedent.

[POINT II]

The [judge] erred in entering [s]ummary [j]udgment in favor of [Michael], and against [Peter], where no

---

[1] We mean no disrespect by referring to the brothers by first name.

creditable evidence existed that the decedent made a valid inter vivos gift of the . . . property.

[POINT III]

The attempted transfer of the . . . property from the decedent to [Michael] was constructive fraud because it was without consideration eleven days after the entry of a judgment against the decedent, which rendered him insolvent, and only two and a half months before he filed for bankruptcy.

[POINT IV]

The [judge] erred in entering [s]ummary [j]udgment in favor of [Michael] where no discovery had been permitted on the validity of the [d]ecedent's alleged inter                                vivos                                gift.

[POINT V]

The [judge] erred when [he] entered summary judgment in favor of [Michael] where issues of material fact remain in dispute as to the validity of the decedent's alleged inter vivos gift.

[POINT VI]

The [judge] erred in granting summary judgment by weighing the parties' competing [a]ffidavits and making premature findings of fact and credibility determinations.

[POINT VII]

The [judge] erred in holding that [Peter] lacked standing to challenge the 2009 [t]ransfer of the . . .

   A-3410-18T3

property.

[POINT VIII]

The [judge] erred by finding that the statute of limitations barred [Peter] from challenging the 2009 Deed as a fraudulent transfer of the . . . property.

[POINT IX]

The [judge] erred when it ruled on the [c]ross-[m]otions for [s]ummary [j]udgment without ruling on [Peter's] August 7, 2017 [m]otion to [d]isqualify [Michael's trial counsel], and to [a]ppoint an [a]dministrator [a]d [l]item.

[POINT X]

The [judge] erred when it failed to disqualify [Michael's trial counsel] from representing . . . Michael . . . due to a conflict of interest created by their prior representation of the decedent on the identical issue of ownership of the . . . property.

[POINT XI]

The [judge] erred when [he] failed to recognize the [e]xecutor's personal conflict of interest and appoint a temporary fiduciary to protect the interests of the decedent's [e]state.

[POINT XII]

Executor is barred by judicial estoppel from denying the decedent owned the . . . property due to the decedent's statements of ownership made to and relied upon by the [b]ankruptcy [c]ourt in discharging his debt.

4

## I.

We review de novo orders granting summary judgment and apply the same standard that governed the trial court's ruling. Lee v. Brown, 232 N.J. 114, 126 (2018). Summary judgment will be granted if, viewing the evidence in the light most favorable to the non-moving party, "there is no genuine issue of material fact and 'the moving party is entitled to a judgment or order as a matter of law.'" Conley v. Guerrero, 228 N.J. 339, 346 (2017) (quoting Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016)); R. 4:46-2(c).

Decedent and his wife, who predeceased him, owned the property since 1992. On October 16, 2009, an unrelated civil judgment was entered against decedent for roughly $3.7 million dollars. Eleven days later, decedent allegedly executed a gift deed transferring the property to Michael. The instrument, however, referred to the wrong address for the property. On November 9, 2009, a city assessor notified decedent that the county clerk's office would not process the deed until the decedent corrected the address. The deed was never corrected.

On January 13, 2010, decedent filed a Chapter 11 petition for bankruptcy. Although it appeared that he had gifted the property to Michael, in the bankruptcy case the decedent listed the judgment and reported that he owned the

5

property in fee simple. In his statement of financial affairs, decedent had the opportunity to disclose whether he made any gifts more than $200 within one year preceding the filing of the bankruptcy petition. In the "Gift" section of the statement, decedent responded "none," which raised a further question over whether he had gifted the property to Michael.

In March 2010, the bankruptcy court approved a settlement, which resolved the civil judgment and recorded the mortgage on the subject property as satisfied. In December 2010, decedent filed an amended Chapter 11 plan and disclosure statement, which reiterated his ownership interest in the property. In January 2011, the bankruptcy court discharged the petition. Thereafter, decedent continued making various payments for the property until he passed away in December 2015. In his Will, decedent left his entire estate to his children in "equal shares."

In addition to taking responsibility for the expenses related to the property after January 2011 (mortgage payments, taxes, utilities, and maintenance), decedent represented to several people that he owned the property. Indeed, his daughter—who is not a party to the litigation—certified that he referred to the property as "his house," that he never indicated that it belonged to Michael, and that he stated that the property was to be enjoyed by "all of his children, as a

6

family."  And importantly, the daughter recalled the decedent explicitly telling her that Michael "did not own the property."

After the decedent's death in December 2015, the executor attempted to correct the deficiency of the October 2009 gift deed of the property to Michael. Along those lines, the executor prepared a "Deed of Correction" dated February 1, 2016.  The instrument referred to a purported "mutual mistake in the legal description" of the property.  Peter certified that he learned about this in June 2016, and by filing this complaint, he disputed any suggestion that decedent gifted the property to Michael.

In granting summary judgment to Michael, the judge found decedent intended to gift the property to Michael.  He accepted Michael's certification that the decedent assumed the upkeep expenses on the property to "express gratitude" for Michael's use of the property and to prove Peter knew Michael used the property before the decedent's death.  The judge also accepted Michael's certification that the decedent intended each son to have "one of the two family properties."  Peter disputed these allegations, which highlighted whether the decedent intended to gift the property.

Of course, ownership of real property is transferred by deed.  N.J.S.A. 46:3-13; see also H.K. v. State, Dep't of Human Servs., Div. of Med. Assistance

& Health Servs., 184 N.J. 367, 382 (2005) (setting forth the specifics of such a transfer). But "[w]hether delivery and acceptance [of a deed] have taken place . . . is a matter of intention." Ibid. (first and third alteration in original) (quoting Dautel Builders v. Borough of Franklin, 11 N.J. Tax 353, 357 (1990)). "If there is physical delivery without the requisite intent that the deed be presently effective as a conveyance of the grantor's title, there is, in legal contemplation, no delivery." Ibid. (citation omitted). Although the deed does not need to be recorded to pass title, Tobar Constr. Co. v. R.C.P. Assocs., 293 N.J. Super. 409, 413 (App. Div. 1996), delivery of the deed can be shown by "[a]nything that clearly manifests the grantor's intention that the deed become immediately operative and that the grantee become the owner of the estate purportedly conveyed[.]" Dautel Builders, 11 N.J. Tax at 357.

Pertinent to the factual issue here, for a gift to be valid and irrevocable there must be "donative intent; that is, 'the donor must possess the intent to give.'" Bhagat v. Bhagat, 217 N.J. 22, 40 (2014) (explaining there must be actual or constructive delivery, donative intent by the grantor, and valid acceptance by the grantee) (quoting Pascale v. Pascale, 113 N.J. 20, 29 (1988)). There are numerous instances in the record that call into question the decedent's delivery, donative intent, and his intention to "absolutely and irrevocably relinquish

'ownership and dominion over the subject matter of the gift, at least to the extent practicable or possible, considering the nature of the articles to be given.'" Bhagat, 217 N.J. at 40.

For example, the decedent claimed ownership of the property in bankruptcy, which occurred several months after the purported deed transfer. Peter asserts that if the decedent intended to gift the property to Michael, he would have not listed the property in his bankruptcy acknowledgements. Peter contends that the decedent would not have indicated "none" in the section titled "Gifts." Notably, after the alleged transfer to Michael in 2009, the decedent represented himself as the owner of the property on forms addressed to the condominium association, the City, and forms signed by the decedent to commence construction on the property.

Moreover, there are several certifications (other than Peter's) that further question whether the decedent possessed the requisite intent. The daughter certified the property was shared family property, the decedent repeatedly encouraged her to visit, and the decedent told her "Michael did not own the property." John Huffman, who served as decedent's accountant until his death, certified that the decedent "always represented to me that he was the owner of the [property]. I had no reason to believe [the decedent] did not own this

property until after his death." The accountant also recalled decedent "claimed deductions on his tax returns for the property taxes he paid on the [subject property]."

Finally, the decedent's Will underscores that the parties genuinely dispute whether the decedent possessed the donative intent to gift the property to Michael. Decedent's Will makes no specific bequests of personal or real property. Rather, the Will demonstrates an intent to split the decedent's estate equally among decedent's children, evidenced by the bequest: "I give, devise and bequeath my entire estate to my son, Peter Pietrangelo; my daughter, Dina Pietrangelo; and my son, Michael Pietrangelo – in equal shares."

II.

Peter's remaining arguments are without sufficient merit to warrant discussion in a written opinion, R. 2:11-3(e)(1)(E), or are moot in light of our reversal of summary judgment and remand for a trial. We add the following brief remarks.

Peter is not challenging the decedent's Will on this appeal. To the extent that he argues the decedent's conveyance of the property was fraudulent under the Uniform Fraudulent Transfer Act (UFTA), N.J.S.A. 25:2-20 to -34, we agree with the judge that Peter lacks standing because he is not a "creditor." "The

UFTA was designed as a vehicle by which creditors may recover from debtors and others who hinder their collection efforts." Banco Popular N. Am. v. Gandi, 184 N.J. 161, 177 (2005). A creditor is a person "with a claim." N.J.S.A. 25:2-21. A claim means "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." Ibid. Peter has no "claim" to the property. He has a financial interest in the property as a purported beneficiary, but such an interest is different than a "claim" under the UFTA.

Peter's contention that Michael's trial counsel had a conflict of interest appears to be moot since different lawyers represent Michael on this appeal. The judge denied Peter's motion for disqualification of Michael's trial counsel—not on the merits— because Peter sought that particular relief as part of his motion for reconsideration, which was out of time, and because the judge had granted summary judgment to Michael. On remand, if Michael's trial counsel resumes his legal representation, we direct the judge to address Peter's disqualification motion on the merits.

We leave the details of the remand proceedings to the judge. The parties, however, are not precluded from raising any and all contentions as to the

decedent's purported donative intent, including the doctrine of judicial estoppel if appropriate.

Reversed and remanded for trial.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3410-18T3